UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x
PRISCILLA FONTANEZ,                                    :
                                                       :          OPINION AND ORDER
                               Plaintiff,              :          12-CIV-1582 (ER)
                                                       :
                v.                                     :
                                                       :
ROMEO SKEPPLE and                                      :
WESTCHESTER COUNTY,                                    :
                                                       :
                               Defendants.             :
————————————————————————x

Appearances:

Michael A. Deem, Esq.
Law Office of Michael A. Deem, P.L.L.C.
Ossining, New York
*Counsel for Plaintiff*

Irma Wheatfield Cosgriff, Esq.
Westchester County Attorney's Office
White Plains, New York
*Counsel for Defendants*

Ramos, D.J.:

      Plaintiff Priscilla Fontanez ("Fontanez" or "Plaintiff") brings suit against Romeo Skepple

("Skepple") and Westchester County (collectively, "Defendants") for injuries pursuant to the

Driver's Privacy Protection Act ("DPPA") and pendent state causes of action for negligence,

gross negligence, intentional and negligent infliction of emotional distress, negligent supervision,

and *respondeat superior*.  Jurisdiction is based on federal question jurisdiction pursuant to 28

U.S.C. §§ 1331 and 1343 over claims arising under the DPPA.  Now pending before the Court is

Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth

below, Defendants' motion to dismiss is GRANTED.

### I.  Background

The following facts are taken from Plaintiff's First Amended Complaint, which the Court accepts as true for the purpose of Defendants' Rule 12(b)(6) motion.[1]  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Beginning in October 2011, Fontanez began to visit her boyfriend, Fernando DeJesus ("DeJesus"), at the Westchester County Jail ("WCJ"), where Defendant Skepple worked as a corrections officer.  (Am. Compl. ¶¶ 1, 10.)  Fontanez visited DeJesus at the WCJ over thirty times from October 2011 to January 6, 2012.  (*Id.* ¶ 11.)  Each time she visited the WCJ, Fontanez was required to show proof of identification, which she did using her New York State driver's license.  (*Id.* ¶¶ 1, 11.)  The information from her license and her telephone number were entered into a computer database at the WCJ and her license was kept on the counter of the visitors' entrance for some period of time each time she visited, where it was in full view of the corrections officers on duty.  (*Id.* ¶¶ 10, 12.)  Plaintiff alleges that Skepple, who was assigned to the visitor's entrance inside the WCJ, obtained Fontanez's name and address from her license and her phone number from the WCJ database.  (*Id.* ¶¶ 13-14.)

On January 6, 2012, Fontanez received at her home, a bouquet of flowers, a teddy bear with the words "I love you.  Only you," and a card.  (*Id.* ¶ 15.)  On the card was a note:  "Happy New Year from your new admirer.  We met at Valhalla [WCJ] and I sent you these roses because you are a beautiful person.  Call me (347) xxx-xxxx.  Romeo."  (*Id.*)  Later that day, Skepple called Fontanez from his personal phone, asking if she had received the flowers that he had sent and stating that they had met at the WCJ while she was going through the metal detector.  (*Id.* ¶

---

[1] Defendants attached a portion of Fontanez's 50-h examination to their Motion to Dismiss.  As explained further in Section III(b), the Court did not rely on this material in deciding the present Motion.

16.)  Fontanez told Skepple that she did not know who he was, did not recall ever seeing him, and stated that she was going to inform the police about his misconduct.  (*Id.* ¶ 17.)  During this conversation, Skepple stated that he obtained Fontanez's information "from the computer at the jail."  (*Id.*)  Skepple called Fontanez on one other occasion, threatening retaliation if she reported his conduct.  (*Id.* ¶ 18.)  He then sent Fontanez a text message with a picture of himself in a Westchester County Department of Corrections uniform taken at the WCJ.  (*Id.* ¶¶ 18-19, 21.)

## II.  Procedural History

Plaintiff and DeJesus commenced this lawsuit on March 5, 2012.  On March 12, 2012, Plaintiffs filed a motion for a protective order against Skepple.  The Court denied the motion, as it had no jurisdiction to grant the relief requested.  During a pre-motion conference on April 5, 2012, Plaintiffs were granted leave to file an Amended Complaint alleging state causes of action. On April 19, 2012, DeJesus's Notice of Voluntary Dismissal was granted, leaving Fontanez as the only Plaintiff in the suit.  The First Amended Complaint was filed on April 27, 2012. Defendants were granted leave to file the current motion to dismiss on June 14, 2012, and this motion was subsequently filed on July 5, 2012.

## III. Rule 12(b)(6) Motion to Dismiss

### a.  General Standard

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must take the allegations of the complaint to be true and "draw all reasonable inferences in favor of the plaintiff."  *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### b.  Extrinsic Material

When ruling on a Rule 12(b)(6) motion, the court is generally confined to the four corners of the complaint and allegations contained therein.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  Any written instrument attached to a Complaint or document incorporated in it by reference may be deemed part of the Complaint itself.  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  In addition, a court may consider materials submitted by a defendant with a Rule 12(b)(6) motion where the plaintiff has "actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint ." *Id.* at 48.  If matters outside the pleadings are presented with a Rule 12(b)(6) motion, the Court has the option to either "exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Willing v. Suffolk Cnty. Dep't. of Soc. Servs.*, No. 09-CV-5285 (ADS) (ETB), 2010 WL 2736941, at *2 (E.D.N.Y. July 8, 2010) (quoting *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)) (internal quotation marks omitted).

Here, Defendants annex as an exhibit to their Rule 12(b)(6) motion an excerpt of the transcript of Fontanez's testimony at a hearing held on March 28, 2012 pursuant to New York General Municipal Law § 50-h ("50-h testimony").  (Defs.' Mot. to Dismiss Ex. D.)  Defendants cite *Dellate v. Great Neck Union Free Sch. Dist.* in support of their argument that the Court

4

consider Fontanez's 50-h testimony; however, in the *Dellate* case, *both* of the parties relied on

the 50-h testimony to support their arguments.  No. CV 09-2567 (AKT), 2010 WL 3924863, at

*4 (E.D.N.Y. Sept. 30 2010), *aff'd*, 448 F. App'x 164 (2d. Cir. 2012); *see also* Defs.' Reply

Mem. L. 4.  By comparison, in the present case, only Defendants rely on the 50-h testimony.

 In cases similar to the present one, courts have found that it is not appropriate to consider

50-h testimony in ruling on a Rule 12(b)(6) motion.  *See, e.g.*, *Willing*, 2010 WL 2736941, at *3

(holding that 50-h testimony is proper for a summary judgment motion, not a 12(b)(6) motion);

*Aguilera v. Cnty. of Nassau*, 425 F. Supp. 2d 320, 322-23 (E.D.N.Y. 2006) (declining to consider

50-h testimony on Rule 12(b)(6) motion where plaintiff did not "incorporate his 50-h testimony

by reference in the complaint" and "[did not] attach[] the transcript to the complaint in whole or

in part," and finding that "there [was] no reason to believe that the plaintiff relied on the

transcript of his own testimony, rather than his independent recollection of the events, in drafting

the pleading"); *Hazan v. City of New York*, 98 Civ. 1716 (LAP), 1999 WL 493352, at *7

(S.D.N.Y. July 12, 1999) (finding that a review of the hearing transcript "in and of itself seems

an exercise that is better suited for a motion for summary judgment").  Accordingly, the

transcript proffered by Defendants will not be considered by this Court.

### IV. The Driver's Privacy Protection Act

 Plaintiff brings her federal claims pursuant to 18 U.S.C. § 2724 of the DPPA.  The

purpose of the DPPA is to restrict the States' ability to disclose a driver's personal information

without the driver's consent.  *Reno v. Condon*, 528 U.S. 141, 143-44 (2000).  Under the DPPA,

"[a] State department of motor vehicles, and any officer, employee, or contractor thereof, shall

not knowingly disclose or otherwise make available to any person or entity . . . personal

information . . . about any individual obtained by the department in connection with a motor

5

vehicle record." 18 U.S.C. § 2721(a)(1).  "Personal information" is defined as "information that identifies an individual," and the term "motor vehicle record" is defined as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles."  18 U.S.C. § 2725(1), (3).

Section 2724(a) of the DPPA creates a private right of action to enforce violations of § 2721.  It states that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains."  18 U.S.C. § 2724(a).  In order to establish a claim under § 2721, a plaintiff must show "that the defendants caused a DMV search to be made," and "that the search was not permitted by any exception to the DPPA."  *Luparello v. Inc. Vill. of Garden City*, 290 F. Supp. 2d 341, 344 (E.D.N.Y. 2003) (Police officer obtained Plaintiff's personal information after searching vehicle licensing records of the DMV); *see also Manso v. Santamarina & Assocs.*, No. 04 Civ. 10276 (LBS), 2005 WL 975854, at *3 (S.D.N.Y. May 16, 2005) (Defendants obtained personal information about Plaintiff through third party's search of DMV records); *Cowan v. Ernest Codelia P.C.*, No. 98 Civ. 5548 (JGK), 2001 WL 856606, at *8 (S.D.N.Y. July 30, 2001) (Defense attorney hired a third party to perform searches of DMV records for opposing counsel's personal information).  Thus, to make out a violation of the DPPA, a Plaintiff must allege that the personal information was obtained from or through a search of DMV records.  There is no violation if the identifying information is voluntarily provided by the holder of the DMV record.  *See Figueroa v. Taylor*, No. 06 Civ. 3676 (PAC) (KNF), 2006 WL 3022966, at *4 (S.D.N.Y. Oct. 23, 2006).  In *Figueroa*, the Court found that the plaintiff did not state a cause of action under the DPPA because she willingly gave the defendants her driver's permit and because defendants were not "a state motor vehicle agency."

6

*Id.*  The court found these facts to be dispositive because "Congress emphasized that DPPA's purpose was to prohibit *state motor vehicle agencies* from disclosing personal information."  *Id.* (emphasis added).

Here, Plaintiff alleges that Defendant took her information from her driver's license and a computer maintained by the WCJ.  She does not allege that "the defendant[ ] performed a search with the New York state DMV or that [he] caused a DMV search to be made by a third party to obtain" her information.  *Id.*  Rather, she alleges that Skepple "obtained her name and home address directly from her [driver's license]," and that "Skepple then used [her] information to obtain [her] telephone number from the WCJ computer database."  (Am. Compl. ¶ 14.)

Both Congress and the Supreme Court have emphasized that the DPPA was "enacted to regulate the disclosure and use of personal information obtained from a state DMV."  *Figueroa*, 2006 WL 3022966, at *4 (citing *Reno*, 528 U.S. at 146; *Margan v. Niles*, 250 F. Supp. 2d 63, 68 (N.D.N.Y. 2003)).  As Plaintiff in this case was herself the source of the personal information and has not shown that Defendant obtained her personal information from the DMV, she cannot establish a violation of the DPPA.

## V.  State Court Causes of Action

In addition to her federal claim, Fontanez brings pendent state claims.  These claims include negligence, gross negligence, intentional and negligent infliction of emotional distress, negligent supervision, and *respondeat superior*.  As these state claims were brought pursuant to 28 U.S.C. § 1367, this Court cannot maintain supplemental jurisdiction over the state claims after dismissing the federal claim.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

## VI.  Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss for failure to state a

claim is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion and

close this case.  (Doc. 16.)

It is SO ORDERED

Dated: March 6, 2013
White Plains, New York

Edgardo Ramos, U.S.D.J.

8